IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PETER FRANCIS JAMA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   1:15CV847 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Peter Francis Jama, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 14; see also Docket Entry 12 (Plaintiff's Memorandum); Docket Entry 15 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

**I.   PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI, alleging an onset date of March 8, 2008. (Tr. 241-57.) Upon denial of those applications initially (Tr. 80-105, 140-49) and on reconsideration (Tr. 106-39,

154-62), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 163-64). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 29-79.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 11-23.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-7, 8, 310-15), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2014.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since March 8, 2008, the alleged onset date.
>
> . . .
>
> 3. [Plaintiff] has the following severe impairments: diabetes mellitus, ocular hypertension (pre-glaucoma); depressive disorder; osteoarthritis; and degenerative disc disease.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except [Plaintiff] may need to shift positions every 40 minutes. He can occasionally bend, stoop, kneel, crouch and crawl. He should avoid concentrated exposure to humidity, heat and

cold. [Plaintiff] is able to understand and carry out simple, routine, repetitive tasks.

. . .

6. [Plaintiff] is capable of performing past relevant work as a door-to-door sales representative. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.

. . .

In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] can also perform.

7. [Plaintiff] has not been under a disability, as defined in the [] Act, from March 8, 2008, through the date of this decision.

(Tr. 16-23 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead,

3

the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the

4

claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . .
(continued...)

6

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

---

[3] (...continued)
[which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

(1) "[t]he ALJ's failure to accord any weight to [Plaintiff's] former supervisor's statement regarding accommodations is not supported by substantial evidence" (Docket Entry 12 at 4 (bold font omitted)); and

(2) "[t]he ALJ failed to account for [Plaintiff's] moderate difficulties in concentration, persistence, or pace [("CPP")] in [Plaintiff's] RFC assessment" (id. at 5 (bold font omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 15 at 4-12.)

**1. Former Supervisor's Statement**

In Plaintiff's first assignment of error, he contends that "[t]he ALJ's failure to accord any weight to [Plaintiff's] former supervisor's statement regarding accommodations is not supported by substantial evidence." (Docket Entry 12 at 4 (bold font omitted).) Plaintiff faults the ALJ for finding the statement "'so casual and vague, even the so called accommodation is simply not clear'" (id. at 4-5 (quoting Tr. 17)), because the former supervisor, John C. Mauk, "listed very clearly, the following six accommodations:

> '1) I offered [Plaintiff] liberal leave and staggered hours. 2) [Plaintiff] was extended breaks for medication and rest. 3) We brought in a special chair to help support his strained back, arm and leg. 4) We brought in a refrigerator for meds, special diet, and fluids to control diabetes/dehydration. 5) Nurse visits were granted to pick lines in lieu of long painful rides to hospital. 6) Spouse was permitted to visit work'" (id. at 5 (quoting Tr. 939)).

8

Plaintiff further maintains that the ALJ "erroneously asserted these accommodations were given 'as a [']friend['] more than an employer'" (id. at 5 (quoting Tr. 17)), because Mr. Mauk's e-mail "states very clearly that [he] 'was [Plaintiff's] direct supervisor during his accident' and '[he] did not offer the same accommodations [to other employees] because they were not in a motorcycle accident'" (id. (citing Tr. 939)). Plaintiff's arguments ultimately miss the mark.

As Plaintiff's former supervisor, the regulations categorize Mr. Mauk as an "other source" of opinion evidence, whose statements cannot receive controlling weight. 20 C.F.R. §§ 404.1513(d), 416.913(d); see generally SSR 06-03p, <u>Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies</u>, 2006 WL 2329939 (Aug. 9, 2006) ("SSR 06-03p"). Nevertheless, the ALJ must still evaluate the opinions of "other sources" and sufficiently indicate and explain the weight that the ALJ affords such opinions. See SSR 06-03p, 2006 WL 2329939, at *6 ("Since there is a requirement to consider all relevant evidence in [a claimant's] case record, the case record should reflect the consideration of opinions from . . . 'non-medical sources' who have seen the claimant in their professional capacity.") In that regard, the ALJ should consider:

9

> [T]he nature and extent of the relationship between the
> source and the individual, the source's qualifications,
> the source's area of specialty or expertise, the degree
> to which the source presents relevant evidence to support
> his or her opinion, whether the opinion is consistent
> with other evidence, and any other factors that tend to
> support or refute the opinion.

Id. at *5.

Here, the ALJ evaluated Mr. Mauk's statement at two different places in the ALJ's decision. First, the ALJ considered the statement at step one of the SEP in deciding whether Plaintiff had engaged in substantial gainful activity ("SGA") after his alleged onset date. (See Tr. 16.) The ALJ noted as follows:

> Despite a statement from [Plaintiff's] former manager,
> the evidence does not demonstrate that [Plaintiff's] work
> activity in 2009 was an unsuccessful work attempt. The
> e-mail from [Plaintiff's] former supervisor was, at best,
> vague. It provided no time-frame for the claimed
> accommodation given to [Plaintiff]. It was not an
> especially explanatory note that explained why
> [Plaintiff] needed an accommodation, or the manner in
> which the corporation provided it. It appears that the
> 'accommodation' was given only immediately after
> [Plaintiff] had his accident and then given to
> [Plaintiff] as a 'friend' more than as an employer.
> Moreover, the e[-]mail is so casual and vague, even the
> so-called accommodation is simply not clear. Moreover,
> [Plaintiff] worked after he left the job in which he made
> greatly more earnings and SG[A], without any
> accommodation.

(Tr. 16-17 (internal citations omitted).) The Court need not determine whether substantial evidence supports the ALJ's evaluation of Mr. Mauk's statement in connection with the ALJ's step one finding, because the ALJ ultimately found that Plaintiff had not engaged in SGA since his onset date (see Tr. 16), and

10

proceeded to address the remaining steps of the SEP (see Tr. 16-23).

However, the ALJ revisited Mr. Mauk's statement in the RFC assessment:

> [Plaintiff] injured his right leg in 2004 and continued working after that date. <u>He presented evidence of a so called accommodation at his place of work, but as previously mentioned, this information does not refer to the dates these measures were necessary</u>. At the hearing, [Plaintiff] testified that he stopped working because of the market crash rather than his symptoms, a factor that weighs against his credibility regarding the effects of his impairments.

(Tr. 20 (emphasis added).) Because the ALJ considered Mr. Mauk's statement as part of the RFC determination (which affects later findings at steps four and five of the SEP regarding whether Plaintiff retains the RFC to perform any of his past relevant work or other jobs in the national economy, see 20 C.F.R. §§ 404.1520, 416.920), the undersigned will evaluate whether substantial evidence supports the ALJ's reasoning.

In the ALJ's second discussion of Mr. Mauk's statement quoted above, the ALJ cited <u>only</u> the statement's failure to include the dates that Mr. Mauk provided the accommodations to Plaintiff as the basis for discounting the statement. (Id.)[5] Mr. Mauk indeed

---

[5] Plaintiff's challenge to the ALJ's description of Mr. Mauk's statement at step one of the SEP as "casual and vague" (Docket Entry 12 at 5 (citing Tr. 17)) has some merit, as Mr. Mauk's statement describes with a fair degree of particularity the accommodations he provided to Plaintiff (see Tr. 939). Similarly, Plaintiff correctly challenged the ALJ's assertion that Mr. Mauk extended those accommodations "'as a [']friend['] more than as an employer'" (id. (quoting Tr. 17)), where nothing in Mr. Mauk's statement expressly states (or even implies) that "friendship" motivated Mr. Mauk to extend the accommodations. Nevertheless,
(continued...)

11

failed to specify how long he extended the accommodations after Plaintiff's motorcycle accident. (See Tr. 939.) Plaintiff's motorcycle accident occurred in 2004 (see, e.g., Tr. 626), and he continued to work for the same employer, Countrywide Home Loans, until March 2008 (see Tr. 34). Mr. Mauk's statement reports that he served as Plaintiff's "direct supervisor <u>during his accident</u>." (Tr. 939 (emphasis added).) Accordingly, Mr. Mauk's statement does not even indicate how long after the 2004 accident he remained Plaintiff's supervisor, let alone how long he extended all of those accommodations. Thus, the ALJ did not err in discounting Mr. Mauk's statement for failure to specify the dates of accommodation.

Even assuming that substantial evidence does not support the ALJ's basis for discounting Mr. Mauk's statement in the RFC analysis, any resulting error qualifies as harmless under the facts of this case. See Morgan v. Barnhart, 142 F. App'x 716, 723 & n.6 (4th Cir. 2005) (applying harmless error standard in Social Security appeal); see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Even if Plaintiff had required (and received) Mr. Mauk's accommodations throughout

---

[5] (...continued)
the ALJ did <u>not</u> expressly rely on these bases for discounting the statement in conjunction with the RFC determination. (See Tr. 20.)

the entirety of his employment with Countrywide, the record establishes that Plaintiff held three different jobs <u>after</u> leaving the position under Mr. Mauk's supervision, and that he did not receive <u>any</u> special workplace accommodations in those jobs. (<u>See</u> Tr. 259, 264, 272-73, 279.) Moreover, The ALJ specifically found at step four that Plaintiff retained the RFC to return to one of those jobs, the door-to-door salesman position (<u>see</u> Tr. 22), and Plaintiff challenges neither that finding, nor the ALJ's alternative finding of other jobs available in significant numbers in the national economy that Plaintiff could perform (<u>see</u> Docket Entry 12 at 4-5; <u>see also</u> Tr. 22-23). Accordingly, Plaintiff has failed to show how even fully crediting Mr. Mauk's statement would result in a different outcome in this case. <u>See</u> <u>Dyrda v. Colvin</u>, 47 F. Supp. 3d 318, 326-27 (M.D.N.C. 2014) (Schroeder, J.) (finding ALJ's failure to properly evaluate lay witness's statement harmless error where the plaintiff made "no attempt to show at which step he was prejudiced by the ALJ's failure to explain the weight given to the lay witness's statement").

In sum, Plaintiff's first claim on review entitles him to no relief.

### 2. CPP

In Plaintiff's second issue on review, he alleges that the ALJ "failed to account for [Plaintiff's] moderate difficulties in [CPP] in [Plaintiff's] RFC assessment." (Docket Entry 12 at 5 (bold font

13

omitted).) Plaintiff maintains that, pursuant to Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), "'an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work . . . [because] the ability to perform simple tasks differs from the ability to stay on task,' and '[o]nly the latter limitation would account for a claimant's limitation in [CPP].'" (Docket Entry 12 at 6 (quoting Mascio, 780 F.3d at 638 (internal quotation marks omitted)).) According to Plaintiff, the ALJ's inclusion of simple, routine, repetitive tasks ("SRRTs") in the RFC, "without adequate explanation . . . does not account for [Plaintiff's] moderate difficulties in [CPP]." (Id. at 7 (citing Tr. 19).) Plaintiff's argument falls short.

The Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, the Mascio court also allowed for the possibility that an ALJ could adequately explain why moderate limitation in CPP would not require the RFC to include specific restrictions related to the ability to stay on task. Id. A neighboring federal district court recently had occasion to discuss this very point:

> Mascio does not broadly dictate that a claimant's moderate impairment in [CPP] always translates into a limitation in the RFC. Rather, Mascio underscores the ALJ's duty to adequately review the evidence and explain

14

> the decision . . . . An ALJ may account for a claimant's
> limitation with [CPP] by restricting the claimant to
> simple, routine, unskilled work where the record supports
> this conclusion, either through physician testimony,
> medical source statements, consultative examinations, or
> other evidence that is sufficiently evident to the
> reviewing court.

Jones v. Colvin, No. 7:14CV00273, 2015 WL 5056784, at *10-12 (W.D. Va. Aug. 20, 2015) (Magistrate Judge's Report & Recommendation adopted by District Judge) (unpublished) (emphasis added); see also Hutton v. Colvin, No. 2:14-CV-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015) (unpublished) (finding reliance on Mascio "misplaced" and that ALJ "gave abundant explanation" for why unskilled work adequately accounted for claimant's moderate limitation in CPP, where ALJ relied on claimant's daily activities and treating physicians's opinions of claimant's mental abilities).

Here, the ALJ sufficiently explained why a restriction to SRRTs adequately accounted for Plaintiff's moderate limitation in CPP. At step three, although the ALJ assessed moderate limitation in that area of functioning, she also discussed evidence which showed that Plaintiff retained some ability to sustain his concentration:

> With regard to [CPP], [Plaintiff] has moderate
> difficulties. [Plaintiff] reported depressive symptoms,
> including a need to sleep throughout the day. <u>However,
> he admitted that he enjoyed reading. In addition, his
> memory and concentration were intact at mental status
> examinations</u>.

(Tr. 18 (emphasis added).)

Moreover, in determining the RFC, the ALJ discussed Plaintiff's testimony and the objective medical evidence (see Tr. 19-21), found Plaintiff's subjective complaints "not entirely credible" (Tr. 21), and provided the following analysis regarding Plaintiff's alleged depression and symptoms:

> [Plaintiff] has received treatment for depression throughout the alleged period of disability. It appears that he has switched psychiatric medications many times based on an increase in symptoms or side effects. Despite his allegations at the hearing, [Plaintiff] had relatively normal mental status examinations throughout the time at issue. In addition, he often denied depression to his providers. At a recent treatment session in February of 2014, [Plaintiff] stated he was doing well on his current medications. At the hearing he admitted that he has resisted therapy for depression. The medical evidence of record shows [Plaintiff] suffers from depression, but there is insufficient support for [Plaintiff's] allegation of more extreme symptoms such as sleeping for 16 hours per day. <u>Although the record does not support many limitations due to [Plaintiff's] depression, I limited [Plaintiff] to [SRRTs] due to his subjective complaints of depression and the likely impact of his pain medication on his ability to concentrate</u>.

(Tr. 21 (emphasis added) (internal citations omitted).) As the language emphasized above suggests, "[t]he ALJ appeared to just give [Plaintiff] the benefit of the doubt regarding [the moderate] limitation" in CPP. <u>Burger v. Colvin</u>, No. 7:14CV00190, 2015 WL 5347065, at *14 (W.D. Va. Sept. 14, 2015) (unpublished).

Plaintiff raises two complaints with regards to the ALJ's above-quoted analysis. (<u>See</u> Docket Entry 12 at 7-8.) First, Plaintiff maintains that the ALJ's "assertion that [Plaintiff] denied depression 'often,' based on two pages of medical records is

16

not supported by substantial evidence." (Id. at 7 (quoting Tr. 21).) Plaintiff conflates the ALJ's citation of two pages as examples of occasions on which Plaintiff denied experiencing any depression, with citation of such pages as the only records which reflect such denial. The ALJ specifically cited to "(Exs. 25F/3 & 27F/13)" (Tr. 21; see also Tr. 867, 938), and Plaintiff admits that he did deny depression in the records in question (see Docket Entry 12 at 8). However, the record evidences numerous other occasions, after the alleged onset date, on which Plaintiff denied depression. (See Tr. 483, 486, 490, 493, 496, 499, 503.) Thus, the ALJ did not err in observing that Plaintiff "often" denied depression. (Tr. 21.)

Second, Plaintiff asserts that, "despite the ALJ's failure to fully credit [Plaintiff's] testimony about the severity of his depression, the ALJ" limited Plaintiff to SRRTs "'due to his subjective complaints of depression.'" (Docket Entry 12 at 8 (quoting Tr. 21).) Plaintiff argues that "the ALJ's analysis lacks rationale and frustrates meaningful review because it both credits and discredits [Plaintiff's] subjective complaints in the same paragraph." (Id.) As discussed above, in light of the ALJ's finding "not entirely credible" Plaintiff's testimony about "the intensity, persistence and limiting effects of [his] symptoms" (Tr. 21), the ALJ merely gave Plaintiff the benefit of the doubt in limiting him to SRRTs (see Tr. 19, 21).

17

Accordingly, the ALJ's decision created "an accurate and logical bridge," Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000), between the record evidence and her conclusion that Plaintiff can perform SRRTs, notwithstanding moderate limitation in CPP. As a result, the Court should decline to remand under Mascio.

In sum, Plaintiff's second claim on review lacks merit.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 31, 2017